**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JEFFREY FORTER,

      Plaintiff,

v.                                                                                                    No. CIV 04-791 BB/RHS

ELMER BUSTOS, et al.,

      Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS AND
RECOMMENDED DISPOSITION REGARDING
<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

THIS MATTER comes before the Court on consideration of "Plaintiff's Answer to Defense <u>Supplemental</u> Martinez Report and Motion for Summary Judgement ("Motion for Summary Judgment"), filed May 22, 2008 **[Doc. No. 74]** (emphasis in original). Plaintiff is incarcerated and is proceeding *pro se* and *in forma pauperis*. Having considered the parties' submittals, the relevant authorities and being otherwise advised in the premises,[1] the Court recommends that Plaintiff's motion be granted in part and denied in part.

*Summary Judgment Standard*

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact[2] and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56

---

[1] Among other materials, the Court has considered Defendants' Court Ordered Martinez Report ("<u>Martinez</u> Report"), filed February 24, 2005 **[Doc. No. 27]** and Defendants['] Court Ordered Supplemental *Martinez* Report ("Supplemental <u>Martinez</u> Report"), filed May 9, 2008 **[Doc. No. 71]**.

[2] "Material facts" are "facts which might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

("Rule") (c). Under Rule 56(c), the moving party "*always* bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Reed v. Bennett, 312 F.3d 1190, 1194 (10th Cir. 2002) (emphasis in original) (citation omitted).[3] In considering a motion for summary judgment, the court reviews the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).

Although Defendants oppose Plaintiff's motion, they do not contend that any material fact is genuinely at issue, nor do they controvert any of the factual allegations set forth in Plaintiff's Motion for Summary Judgment or Plaintiff's Statement of Undisputed Material Facts ("Statement of Facts") at 1 ¶¶ 1, 2, filed May 23, 2008 **[Doc. No. 75]** (underlining in original).[4] Thus, all material facts set forth in Plaintiff's Motion for Summary Judgment and Statement of Facts are deemed admitted. Nevertheless, the Court is not relieved of its duty to make the specific determinations required by Rule 56(c). See Reed, 312 F.3d at 1194 (finding that "[s]ummary judgment is not proper merely because [the non-movant] failed to file a response"). Accordingly, the Court must determine whether Plaintiff has met his responsibility of demonstrating that he is entitled to summary judgment as a matter of law.

---

[3]"Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Rule 56 (Advisory Committee Notes, 1963 Amendment, Subdivision (e)).

[4]Indeed, Defendants entirely ignore Plaintiff's Statement of Facts. "All material facts set forth in the statement of the movant will be deemed admitted *unless specifically controverted.*" D.N.M.LR-Civ. 56.1(b) (emphasis added).

*Discussion*

I.

Plaintiff moves for summary judgment on his claim that Defendants violated his First Amendment rights in denying him access to a newspaper subscription.[5]  "Inmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison."  Jacklovich v. Simmons, 392 F.3d 420, 426 (10th Cir. 2004) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974).  The United States Court of Appeals for the Tenth Circuit has not specifically held that prisoners are entitled to read newspapers.  However, "[a] number of courts have held that prisoners have a right to receive and read newspapers."  Jones v. Allen, 2007  WL 2725218, at *7 (W.D.Ark. Sept. 18, 2007) (not reported in F.Supp.2d) (collecting cases); see also Thomas v. Leslie, 176 F.3d 489, 1999 WL 281416, at **7 (10th Cir. Apr. 21, 1999) (unpublished opinion) (collecting cases) (agreeing that no valid, rational connection existed between an absolute ban on newspapers and the governmental interest presented as justification).

"[I]mprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment."  Beard v. Banks, 126 S.Ct. 2572, 2577 (2006) (citations omitted).  However, "the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere . . . . [and] courts owe substantial deference to the professional judgment of prison administrators."  Banks, 126 S.Ct. at

---

[5]Plaintiff contends that he has been denied access to a newspaper since he was "transferred to P.N.M. Level 6 in March of 2004."  (Statement of Facts at 1 ¶¶ 1, 2).  Plaintiff also contends that he was denied newspaper access while assigned to Level V within the New Mexico Corrections Department ("NMCD").

2577-78 (citations and internal quotation marks omitted).

The Supreme Court of the United States ("Supreme Court") reconciled these principles in Turner v. Safley, 482 U.S. 78 (1987) by holding that "restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response to such objectives." Banks, 126 S.Ct. at 2578 (quoting Turner, 482 U.S. at 87 (internal citation and quotation marks omitted)). The Supreme Court has set forth "four factors relevant in determining the reasonableness of the [prison] regulation at issue." Banks, 126 S.Ct. at 2578 (citation and internal quotation marks omitted).[6] This Court is mindful that "the constitutional interest here is an important one . . . . [and in defending a ban on newspapers,] prison authorities [are required] to show more than a formalistic logical connection between a regulation and a penological objective." Banks, 126 S.Ct. at 2581 (citation omitted).

## II.

Without exception, inmates housed at Levels VI, V and IV within the NMCD are permitted "no personal ownership or access to newspapers." (Supplemental Martinez Report at 3 and Affidavit of Vince Wiggins ("Wiggins Aff.") at 1, ¶ 1; 2 ¶ 9, Ex. 2 to Supplemental Martinez Report (averring that he is "unaware of any exceptions to this policy").[7] In addition, "the minimum time to progress . . . from Level VI and through Level V is . . . a total of 734 days

---

[6]"First, is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it? Second, are there alternative means of exercising the right that remain open to prison inmates? Third, what impact will accommodation of the asserted constitutional right . . . have on guards and other inmates, and on the allocation of prison resources generally? And, fourth, are ready alternatives for furthering the governmental interest available?" Banks, 126 S.Ct. at 2578 (citations and internal quotation marks omitted).

[7]"Inmates at Levels I to III are allowed access to newspapers in the facility library or they may order their own newspaper subscription." (Wiggins Aff. at 2 ¶ 8).

or two years and four days . . . before reaching Level IV." (Supplemental Martinez Report at 5). However, Plaintiff, as a "validated/suspected security threat group member CANNOT progress lower than Level 4 (IV)." (Statement of Facts at 2 (capitalization and emphasis in original); Motion for Summary Judgment at 7[8]). Plaintiff concludes that pursuant to NMCD policy, he "will never again be able to order, receive, or read a newspaper." (Statement of Facts at 2, ¶ 8). The Court agrees that the application of these NMCD policies effectively imposes a *de facto* permanent ban on Plaintiff's access to newspapers during his incarceration.

III.

Defendants offer two justifications for the policy prohibiting Plaintiff's newspaper subscription: (1) concern over prison safety/security; and (2) as a means of improving inmate behavior by offering an incentive to progress through the levels. (See Supplemental Martinez Report at 3-4 and Affidavit of Tim LeMaster ("LeMaster Aff.") at 2, Ex. 4 to Supplemental Martinez Report). Maintaining prison safety/security and improving inmate behavior are legitimate penological interests. Thus, the Court will apply the relevant Turner factors to determine whether the NMCD's policy prohibiting Plaintiff's newspaper subscription is reasonably related to furthering these interests.

> *1.  Is there a valid, rational connection between the policy and the legitimate governmental interests put forward to justify it?*

The Court perceives no valid, rational connection between prohibiting Plaintiff from receiving a newspaper subscription and Defendants' interest in motivating Plaintiff to progress

---

[8]Plaintiff points to Policy CD-080103 at 13 § 3, contained in Ex. 1A, attached to Supplemental Martinez Report (mandating that "[a]ny inmate who has been validated or suspected as a member of a Security Threat Group . . . shall not be eligible for placement at a Level I, Level II, or Level III facility").

through the level system.  Inmate access to newspapers is prohibited in Levels VI through IV.  Thus, while certain privileges available at Level IV may motivate Plaintiff to reach that level, access to a newspaper is not one of them.  Newspaper subscriptions are available to inmates in Levels III through I.  However, because Plaintiff's "security threat group" status renders him permanently ineligible for placement in Levels III through I, the lack of access to newspapers in Levels VI through IV provides no incentive whatsoever for Plaintiff to progress beyond Level IV.  Because Plaintiff will never have access to a newspaper, *regardless of his behavior*, there is no logical or rational connection between denying Plaintiff a newspaper subscription and Defendants' stated interest in improving Plaintiff's behavior.

Defendants also contend that banning newspaper subscriptions is justified in the interest of safety and security, pointing to the affidavit of Tim LeMaster.[9]  Mr. LeMaster avers that "inmates in Levels V and VI[10] are *generally* those deemed either the most problematic or the most dangerous."[11]  (LeMaster Aff. at 2 ¶ 4 (emphasis added)).  Mr. LeMaster explains that newspapers are prohibited in these levels because they could be fashioned into "handles for increasing the reach of an inmate . . . [with] sharpened items[;] . . . pointed spears that can injure another, as the material is tightened then hardened; and . . . easily-combustible material for

---

[9]Mr. LeMaster avers that he is the Director of the Adult Prisons Division for the NMCD and is "aware and familiar with the rational[e] for various policies of NMCD."  (LeMaster Aff. at 1).

[10]Mr. LeMaster discusses the rationale for banning newspapers only in Levels VI and V.

[11]Not all inmates are placed at these levels because of misconduct.  For example, an inmate may be transferred into Level VI (voluntarily or involuntarily) for his own protection, if he is in danger by remaining in the general population.  (See Policy CD-143001 at 8 ¶ 2, Ex. 5 to Martinez Report).  Plaintiff does not contend that he was placed in Level VI or V for any reason other than misconduct or problematic behavior.

fires." (LeMaster Aff. at 2 ¶ 3). Mr. LeMaster does not maintain that the newspaper ban was implemented in response to actual safety or security incidents involving newspapers. Rather, he explains that "[a]s *potential* threats, NMCD takes precautions to minimize the risk that these inmates may cause property damage . . . as well as harm to staff and other inmates."[12] (LeMaster Aff. at 1 ¶ 2 (emphasis added)). Thus, Defendants prohibit newspapers in Levels VI and V as a precautionary safety/security measure, based on the problematic or dangerous nature of the inmates housed in those levels.

Plaintiff contends that the ban on newspapers is not reasonably related to Defendants' security/safety rationale [13] because "inmates are allowed other reading materials such as, paperback books, magazines[,] bibles . . . [and] cardboard boxes . . . . [which] can be used to make spear handles . . . or set fires. Yet only newspapers are ban[n]ed." (Motion for Summary Judgment at 5-6). Defendants do not disagree that inmates may possess these items,[14] nor do they dispute that these materials pose the same threats to safety and security that newspapers do. In addition, Defendants' rationale based on fire safety is further undermined given that the NMCD prohibits the possession of all smoking materials, "including tobacco, cigarettes, lighters

---

[12]"Officials need not demonstrate an 'actual danger in order to support the reasonableness of their determinations. It is enough to show that a potential danger exists.'" Prison Legal News v. Chesire, 65 Fed.R.Serv. 3d 418, 2006 WL 1868307, at *6 (D.Utah Jun. 30, 2006) (citing Espinoza v. Wilson, 814 F.2d 1093, 1097-98 (6th Cir. 1987)) (not reported).

[13]In Plaintiff's words, "the justifications presented by Defendants for the ban on newspapers do not pass the smell test." (Motion for Summary Judgment at 5).

[14]One exhibit indicates that at the most restrictive step of Level VI (orientation), inmates are allowed to possess, *inter alia*, 3 photographs, 3 personal letters, legal materials, 6 books (1 personal, 3 library, 2 religious), 10 sheets of writing paper and 5 envelopes. (See Level VI Table of Services Attachment to CD-143002, Ex. 1C to Supplemental Martinez Report). As inmates progress through the level system, they are permitted to possess more items.

7

or matches" in inmate cells.  (<u>Martinez</u> Report at unnumbered page 7).[15]

Based on the evidence before it, the Court seriously questions whether a valid, rational connection exists between the policy prohibiting newspapers at any level and Defendants' stated security and safety concerns.[16]  Nevertheless, under the circumstances of this case, and affording substantial deference to the professional judgment of prison authorities, the Court narrowly concludes that Defendants show a valid, rational connection between the prohibition of newspaper subscriptions at Levels VI and V and an interest in maintaining safety and security. However, Defendants offer no justification for banning Plaintiff's newspaper in Level IV.[17] Thus, the Court is unable to discern a valid, rational connection between the newspaper ban in Level IV and Defendants' stated safety and security interest.[18]

   *2.   Are there alternative means of exercising the right that remain open to prison inmates?*

In this case, inmates held in Levels VI through IV are prohibited from receiving any newspaper subscriptions.  Moreover, these inmates have no personal access whatsoever to a

---

[15] "Courts have recognized the tenuousness of the connection between such prohibitions on publications and fire prevention."  <u>Spellman v. Hopper</u>, 95 F.Supp.2d 1267, 1273 (M.D.Ala. Oct. 1, 1999) (citing <u>Parnell v. Waldrep</u>, 511 F.Supp. 764, 767 (W.D.N.C. 1981); <u>Kincaid v. Rusk</u>, 670 F.2d 737, 743 (7th Cir. 1982); <u>Mann v. Smith</u>, 796 F.2d 79, 82 (5th Cir. 1986)).

[16] <u>See</u>, e.g., <u>Thomas</u>, 176 F.3d 489 (upholding a district court's finding that a jail's newspaper ban was not rationally related to security and safety concerns where "other materials presenting the same security and safety concerns were not restricted").

[17] As noted, Mr. LeMaster did not offer an explanation for prohibiting newspapers in Level IV.

[18] Having found no valid, rational relationship between a ban on Plaintiff's newspapers in Level IV and Defendants' interest in safety/security, the Court need not consider the remaining <u>Turner</u> factors regarding Defendants' policy as applied to Plaintiff in Level IV.  <u>See</u> <u>Morrison v. Hall</u>, 261 F.3d 896, 901, 904 (9th Cir. 2001).

newspaper of any kind, including the newspapers that are carried in the prison library.  (See Wiggins Aff.).  Defendants contend that magazines, television and radio are available to inmates as alternative news sources.  The parties do not dispute that Plaintiff has access to personal correspondence and various books.  Plaintiff correctly points out that television is not an adequate substitute for newspapers.  See Jacklovich, 392 F.3d at 431 (agreeing that "the ability to listen to the radio or watch television is not an adequate substitute for reading newspapers and magazines"); see also Thomas, 176 F.3d 489, 1999 WL 281416, at **8 (explaining that "television cannot supply the depth and diversity of coverage that newspapers can provide").

On the current record, it appears that Plaintiff has other avenues by which to receive printed news and information and to maintain ties with the outside world.  "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation."  Turner, 482 U.S. at 90 (citations and internal quotation marks omitted).  The Court concludes that because Plaintiff is permitted access to a broad range of publications, this factor tips slightly in Defendants' favor regarding the validity of the newspaper ban in Levels VI and V.

> 3. What impact will accommodation of the asserted constitutional right have on guards and other inmates and the allocation of prison resources generally?

Neither party specifically addresses this factor.  However, the full accommodation of the right as asserted by Plaintiff would mean allowing Plaintiff to receive a newspaper subscription.  Nothing suggests that the delivery of a newspaper to an inmate would require any additional prison resources, particularly given that prison staff already deliver letters, magazines, books and meals to inmates.  However, if the newspaper ban (in Defendants' view) helps to minimize the

9

likelihood that inmates will cause property damage or harm to others, then allowing newspapers (in Defendants' view) will increase that likelihood, and thus the expenditure of prison resources. See Banks, 126 S.Ct. at 2580.  However, because this type of adverse impact is "in a sense logically related to the Policy itself . . . . the fact that . . . [it] seem[s] to support the Policy does not, therefore count in . . . [Defendants'] favor."  Banks, 126 S.Ct. at 2580.

      *4.*     *Are ready alternatives for furthering the governmental interest available?*

"[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation . . . . [while] the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns."  Turner, 482 U.S. at 90 (citation omitted).  If Plaintiff "can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard."  Turner, 482 U.S. at 91.  Plaintiff contends that "requiring inmates to exchange thier [sic] newspaper on a 'one for one' basis, [would] adequately alleviate[] [Defendants'] . . . security concerns."  (Motion for Summary Judgment at 3 (citing Thomas)).  Defendants do not address Plaintiff's "one for one exchange" suggestion in their response.  The Court agrees that providing newspapers to inmates on an exchange basis would alleviate, although not entirely eliminate, Defendants' safety and security concerns.  Thus, the Court concludes that this factor weighs slightly in Plaintiff's favor.

*Conclusion*

      The Court has analyzed Defendants' policy prohibiting Plaintiff from receiving a newspaper subscription, applying the Turner factors and affording substantial deference to the

professional judgment of prison administrators. Having done so, the Court recommends that Plaintiff's Motion for Summary Judgment **[Doc. No. 74]** be **granted in part** and **denied in part**, as follows:

> (1)   summary judgment should be **granted** on Plaintiff's claim that Defendants violated his First Amendment rights by prohibiting his receipt of a newspaper subscription in Level IV; and
>
> (2)   summary judgment should be **denied** on Plaintiff's claim that Defendants violated his First Amendment rights by prohibiting his receipt of a newspaper subscription in Levels VI and V.

Based on its consideration of the record before it, the Court further recommends that:

> (3)   summary judgment be **granted** in favor of Defendants on Plaintiff's claim that his First Amendment rights were violated by Defendants' policy prohibiting Plaintiff's receipt of a newspaper subscription in Levels VI and V.

All of the Court's recommendations are based upon the facts specific to the instant case and nothing contained herein is to be construed as generally applicable to NMCD policies regarding inmate access to newspapers.

*Notice*

Within ten (10) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

*Robert Hayes Scott*
_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE